Peter Goldstein, SBN 6992
PETER GOLDSTEIN LAW CORP
peter@petergoldsteinlaw.com
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 474-6400
Facsimile: (888) 400-8799

Attorney for Plaintiffs,
*SONIA ESPARZA, individually, and as*
*Special Administrator of the Estate of*
*FERNANDO MARTINEZ, JR.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA (LAS VEGAS)

| | |
|---|---|
| SONIA ESPARZA, individually, and as Special Administrator of the Estate of FERNANDO MARTINEZ, JR., <br><br> Plaintiffs, <br><br> vs. <br><br> WELLPATH, LLC; LAS VEGAS METROPOLITAN POLICE DEPARTMENT; SHERIFF KEVIN MCMAHILL; DEPUTY CHIEF FRED HAAS; DOES 1-20, <br><br> Defendants, <br><br> FERNANDO MARTINEZ SANTOS, <br><br> Nominal Defendant. | **Case No. 2:23-cv-02161-JCM-VCF** <br><br> **FIRST AMENDED COMPLAINT** <br><br> (1) DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS (42 U.S.C. § 1983; Nevada Constitution, Article 1, § 8); <br><br> (2) DEPRIVATION OF FAMILIAL ASSOCIATION (42 U.S.C. § 1983; Nevada Constitution, Article 1, § 8); <br><br> (3) OVERDETENTION (42 U.S.C. § 1983; Nevada Constitution, Article 1, § 8); <br><br> (4) MUNICIPAL LIABILITY, FAILURE TO TRAIN/POLICY AND CUSTOM (42 U.S.C. § 1983); <br><br> // <br> // <br> // <br> // |

(5) DISABILITY DISCRIMINATION (42 U.S.C. § 12131 *et seq.*; 29 U.S.C. § 794 (a));

(6) WRONGFUL DEATH (Nevada state law);

(7) NEGLECT OF A VULNERABLE PERSON (Nevada state law);

Exhibit "A" Redacted Death Certificate

Exhibit "B" Order Appointing Special Administrator

**JURY TRIAL DEMANDED**

Plaintiffs SONIA ESPARZA, individually, and as the Special Administrator of the Estate of FERNANDO MARTINEZ, JR. ("Plaintiffs"), allege upon information, belief, and personal knowledge:

## **INTRODUCTION**

1. On December 3, 2022, FERNANDO MARTINEZ, JR., ("MARTINEZ"), a 33-year-old man suffering from schizophrenia, was arrested and booked into the Clark County Detention Center ("CCDC"), where he was held as a pre-trial detainee.

2. Shortly after his arrival at CCDC, MARTINEZ's schizophrenia began to manifest in extreme paranoia, among other symptoms. As a result, MARTINEZ stopped taking his medication and started refusing meals, which he believed were poisoned. According to his cellmate, on the rare occasion that MARTINEZ did eat, he would immediately purge. This continued for over a month, and MARTINEZ's weight dropped precipitously.

3. On January 18, 2023, the Honorable Christy Craig, a judge of the Clark County District Court, declared that MARTINEZ was incompetent to stand trial. Judge Craig then ordered that "the Sheriff . . . shall" transfer MARTINEZ from CCDC to the Division of

Public and Behavioral Health of the Department of Health and Human Services "for detention and treatment at a secure facility operated by that Division . . .." The judge also ordered that MARTINEZ be examined by a licensed physician, physician assistant, or advanced nurse practitioner to ensure that he was transferred to a facility that was equipped to provide adequate medical and mental health care.[1]

4.  Nevertheless, MARTINEZ was not transferred, but continued to be held at CCDC.

5.  MARTINEZ's condition continued to deteriorate, and on February 14, 2023, he was found dead in his cell.

6.  At the time he entered CCDC, MARTINEZ weighed 220 pounds, and at the time of his autopsy, he weighed 156 pounds.

7.  Thus, over the course of his 73-day detention at CCDC, MARTINEZ slowly and agonizingly starved to death, while Sheriff McMahill ("MCMAHILL"), Deputy Chief Fred Haas ("HAAS"), and their subordinates took no action.

8.  However ghastly this case may seem, it is not unique. As Plaintiffs will explain below, the Las Vegas Metropolitan Police Department ("LVMPD") and its medical provider Wellpath, LLC ("WELLPATH") have a well-documented history of failing to provide adequate medical and mental health care to mentally ill detainees at CCDC.

9.  Despite these entities' commitment and duty to the people of Clark County, they persistently fail to meet the minimum standard of care necessary to ensure that vulnerable individuals like MARTINEZ do not suffer and die while they are in custody.

10. Accordingly, these entities, and the individuals who were directly involved in MARTINEZ's confinement and care, must be held to account.

//

---

[1] Order of Commitment, *State of Nevada v. Fernando Martinez, Jr.*, Case No. C-23-370527-1.

**PARTIES**

11. FERNANDO MARTINEZ, JR. ("MARTINEZ") was an individual residing in Clark County, Nevada, who suffered from schizophrenia and other mental illnesses, making him a protected individual under the Americans with Disabilities Act and the Rehabilitation Act ("ADA").

12. MARTINEZ is survived by his mother, SONIA ESPARZA ("Plaintiff" or "ESPARZA"), who is an individual residing in Clark County, Nevada. She sues in her individual capacity and as Special Administrator of the Estate of FERNANDO MARTINEZ, JR. She seeks all permissible damages under state and federal law.

13. MARTINEZ is also survived by his father, FERNANDO MARTINEZ SANTOS, who is a nominal defendant to this action.

14. Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("LVMPD") is a political entity and the law enforcement agency for Clark County and the City of Las Vegas, duly organized and existing under the laws of the State of Nevada.

15. LVMPD, through the Detention Services Division ("DSD"), is responsible for managing Clark County Detention Center ("CCDC") and for ensuring that the detainees held at CCDC are afforded basic safety, medical care, and the benefits conferred by the ADA.

16. LVMPD, by and through its officials and supervisors at its central offices, facilities, and specialized units, promulgates, implements, and executes policies related to the conditions of confinement at CCDC.

17. LVMPD is also responsible for the training, supervision, discipline, and conduct of all LVMPD's employees and agents. LVMPD is therefore liable to Plaintiffs under a theory of *respondeat superior* for all claims where such vicarious relief is available.

18. Defendant Sheriff Kevin McMahill ("MCMAHILL") was, at all relevant times, the elected chief law enforcement officer and head of LVMPD, with all of the duties and authority attendant to his position as LVMPD's chief policymaker, supervisor, and

manager. He is sued in his individual capacity for acts committed under color of state law.

19. Defendant Deputy Chief Fred Haas ("HAAS") was, at all relevant times, the head of DSD, with all of the duties and authority attendant to his position as a policymaker, supervisor, and manager. He is sued in his individual capacity for acts committed under color of state law.

20. Defendants DOES 1-5 were, at all relevant times, the other policymakers, supervisors, administrators, and managers of LVMPD/DSD who were responsible for ensuring that the detainees at CCDC, including MARTINEZ, were afforded basic safety, medical care, and the benefits conferred by the ADA. These defendants, who are fictitiously named until their identities can be ascertained, are sued in their individual capacities for acts committed under color of state law.

21. Defendants DOES 6-10 were, at all relevant times, the correctional officers, employees, and agents of LVMPD/DSD who were responsible for ensuring that the detainees at CCDC, including MARTINEZ, were afforded basic safety, medical care, and the benefits conferred by the ADA. These defendants, who are fictitiously named until their identities can be ascertained, are sued in their individual capacities for acts committed under color of state law.

22. Defendant WELLPATH, LLC ("WELLPATH") is a for-profit private corporation that was, at all relevant times, contractually obligated to provide medical and mental health care to the detainees at CCDC, including MARTINEZ.

23. Like LVMPD, WELLPATH promulgates, implements, and executes policies related to the conditions of confinement at CCDC. WELLPATH is also responsible for the training, supervision, discipline, and conduct of its employees and agents at CCDC. WELLPATH is therefore liable to Plaintiffs under a theory of *respondeat superior* for all claims where such vicarious relief is available.

24. Defendants DOES 11-15 were, at all relevant times, the policymakers, supervisors, administrators, and managers of WELLPATH who were responsible for ensuring that the detainees held at CCDC, including MARTINEZ, were provided with necessary medical and mental health care. These defendants, who are fictitiously named until their identities can be ascertained, are sued in their individual capacities for acts committed under color of state law.

25. Defendants DOES 16-20 were, at all relevant times, the medical providers, including *inter alia* physicians, physician assistants, nurses, as well as the mental health providers, including *inter alia* psychiatrists, psychologists, and behavioral health specialists, who were responsible for ensuring that the detainees held at CCDC, including MARTINEZ, were provided with necessary medical and mental health care. These defendants, who are fictitiously named until their identities can be ascertained, are sued in their individual capacities for acts committed under color of state law.

## JURISDICTION AND VENUE

26. This civil action is brought pursuant to 42 U.S.C. §§ 1983, 1988, the Fourteenth Amendment to the United States Constitution, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and the constitution and laws of the State of Nevada. Jurisdiction is conferred by 28 U.S.C. §§ 1331, 1343, and 1367, among other provisions, as this action seeks redress for violations of Plaintiffs' federal constitutional rights, federal statutory rights, and pendant state law claims.

27. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the defendants are in, and do business in, Clark County, Nevada, and because the events giving rise to this action occurred in Clark County, Nevada.

//
//
//

## **FACTUAL ALLEGATIONS**

28. Plaintiffs hereby incorporate the facts alleged in the preceding sections and further allege as follows:

29. Defendants MCMAHILL, HAAS, and DOES 1-20 (collectively the "Individual Defendants") knew or should have known that MARTINEZ was schizophrenic because he was diagnosed as such and had been detained at CCDC on at least one prior occasion. LVMPD officers had also responded to several service calls involving MARTINEZ, and, throughout his detention, MARTINEZ was exhibiting severe, easily recognizable symptoms of schizophrenia.

30. The Individual Defendants also knew or should have known that MARTINEZ was not taking his medication or eating regularly because his symptoms persisted, he lost over 60 pounds, and he told as of yet unidentified defendants that he was afraid of being poisoned.

31. Despite the fact that MARTINEZ was in the midst of a mental and medical crisis, and despite the fact that the court had ordered that he be transferred to the custody of the Department of Health and Human Services, the Individual Defendants took no meaningful action.

32. Nearly a month after the court ordered that he be hospitalized, MARTINEZ was still housed in the same cell. His eyes were dilated, and he was so weak that he could barely walk the short distance from his bunk to the toilet.

33. On February 14, 2023, lunch was served around 11:00 a.m., and though MARTINEZ tried to eat, he kept coughing and struggled to keep anything down.

34. When the cell door was opened for free time around 2:00 p.m., MARTINEZ did not have the strength to leave his bunk.

35. When dinner was served around 4:15 p.m., MARTINEZ remained in his bunk and made no effort to eat.

36. Around 7:45 p.m., as of yet unidentified correctional officers and/or Wellpath employees realized that MARTINEZ was still in his bunk and unresponsive. Rigor mortus had set in his jaw, and he could not be intubated. After other attempts to resuscitate him through Cardiopulmonary Resuscitation (CPR) and the use of an automated external defibrillator (AED) proved unsuccessful, MARTINEZ was pronounced dead.

**WELLPATH and LVMPD's ongoing and widespread custom, pattern, and practice of failing to adequately house, monitor, treat, and care for mentally ill individuals within their custody and control.**

37.  WELLPATH is the nation's largest for-profit provider of medical and mental health care to correctional facilities, including facilities located in 37 states.[2]

38. WELLPATH has attained this position, in part, through a well-publicized policy of "cost containment," whereby WELLPATH "work[s] to create efficiencies in staffing, pharmacy, and off-site costs . . ." and markets those "efficiencies" to local governments seeking to reduce expenditures associated with operating their facilities.[3]

39. As detailed in a CNN investigation published in June of 2019, WELLPATH's policy of "cost-containment" has caused the company's employees and agents to "fail to spot and/or treat serious psychiatric disorders," leading to lawsuits arising from "more than seventy deaths" over the previous five years.[4]

---

[2] Blake Ellis and Melanie Hicken, CNN Investigation, CNN (June 2019), https://www.cnn.com/interactive/2019/06/us/jail-health-care-ccs-invs/; Correct Care Solutions RFP 18-026, Lancaster County Youth Service Center.

[3] *See* Correct Care Solutions RFP 18-026, Lancaster County Youth Service Center.

[4] Blake Ellis and Melanie Hicken, CNN Investigation, CNN (June 2019), https://www.cnn.com/interactive/2019/06/us/jail-health-care-ccs-invs/.

40. Based on interviews with current and former WELLPATH employees, CNN determined that the company "has repeatedly relied on inexperienced workers, offered minimal training and understaffed facilities." [5]

41. WELLPATH employees have complained that "specialized testing, medication, and treatments were often denied," and medical units were often understaffed, leading to medical errors.[6]

42. In December of 2018, the Department of Justice Civil Rights Division ("DOJ") investigated the state of the medical and mental health care provided by WELLPATH at a jail in Virginia. The investigation concluded that WELLPATH and the jail failed to provide constitutionally adequate medical and mental health care to prisoners.[7]

43. The DOJ found that the care provided by WELLPATH was deficient in myriad ways, including, *inter alia*:

   a. A "failure to properly screen prisoners with mental illnesses," including by using nurses who are inadequately trained to identify mental illnesses[8]

   b. A "deficient intake process and lack [of] access to appropriate medical and mental health needs"[9]

   c. "Inadequate and inaccurate" record maintenance[10]

   d. "Inadequate quality of care," including "failing to provide adequate mental health treatment," "failing to adequately administer medications and

---

[5] *Id.*
[6] *Id.*
[7] United States Department of Justice, Civil Rights Division, Hampton Roads Investigation Notice (December 19, 2018) at p.1, https://www.documentcloud.org/documents/5978540-Hampton-Roads-DOJ-report.html.
[8] *Id.* at 5, 19.
[9] *Id.* at p. 9, 19.
[10] *Id.*

psychotherapy," and "placing prisoners with serious mental illness in restrictive housing for prolonged periods[11]

    e.  Inadequate medical staffing levels and continuity of care for those suffering from chronic illnesses[12]

    f.  Inadequate monitoring systems[13]

44. The DOJ determined that jail officials evinced deliberate indifference to prisoners' constitutional rights to adequate medical and mental health care, in part, by renewing their contract with WELLPATH after becoming aware of the company's "failure to provide appropriate clinically necessary medical services. . . ."[14]

45. Despite WELLPATH's sordid and well-publicized reputation for providing constitutionally inadequate care, including to detainees at the Las Vegas City Jail, in 2019, LVMPD entrusted the company with the provision of such care to detainees at CCDC.[15]

46. Soon thereafter, detainees began dying, but LVMPD has refused to report these deaths, as required by Assembly Bill 301.[16]

//

---

[11] *Id.* at 1, 13, 21.

[12] *Id.* at 14-15, 23-24.

[13] *Id.* at 16.

[14] *Id.* at 5.

[15] *See*, *e.g.*, *Blue v. City of Las Vegas*, Case No. 2:21-cv-00372-RFB-DJA (Doc. 56) (schizophrenic inmate under WELLPATH'S care starved to death in isolation cell); *Shorter v. City of Las Vegas*, Case No. 2:16-cv-00971-KJD-DJA (Doc. 1); *Donatell v. City of Las Vegas*, Case No. 2:15-cv-023340-RFB-PAL (Doc. 81).

[16] Adyn Runnels, Jails in Clark County ignoring 2019 law designed to increase transparency on in-custody deaths, Las Vegas Sun (April 2024), https://lasvegassun.com/news/2024/apr/07/jails-in-clark-county-ignoring-2019-law-designed-t/; *Smith v. Las Vegas Metropolitan Police Department*, Case No. 2:23-cv-00092-JAD-NJK (Doc. 10) (schizophrenic inmate under LVMPD and WELLPATH's care died from withdrawal after being placed in isolation rather than a medical unit); *Lewis v. City of Henderson*, Case 2:21-cv-01128-APG-VCF (Doc. 1).

## FIRST CLAIM FOR RELIEF

**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**

**(42 U.S.C., § 1983; Nevada Constitution, Article 1, § 8)**

***Special Administrator v. Individual Defendants***

47. Plaintiffs hereby incorporate the facts alleged in the preceding sections and further allege as follows:

48. Individuals held in state custody have a constitutional right to adequate medical and mental health care.

49. For pre-trial detainees, this right is secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 1, section 8, of the Nevada Constitution.

50. According to the Ninth Circuit in *Sandoval v. County of San Diego*, "pretrial detainees alleging that jail officials failed to provide constitutionally adequate medical care must show: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined including a decision with respect to medical treatment; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonably available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries." *Sandoval v. County of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) (citing *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018)). "To satisfy the third element, the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Sandoval*, 985 F.3d, at 669 (quoting *Gordon*, 888 F.3d, at 1125).

51. In this case, the Individual Defendants made intentional decisions regarding the conditions under which MARTINEZ was confined, including, but not limited to, where MARTINEZ was housed and whether and how he was monitored, treated, and transferred during his confinement.

52. These decisions put MARTINEZ at substantial risk of suffering serious harm because they allowed him to lose over 60 pounds in 73 days.

53. The Individual Defendants did not take reasonably available measures to abate that risk, such as transferring MARTINEZ to a hospital, placing him in a medical unit, properly medicating him, or humanely force feeding him.

54. As a result of these acts and omissions, MARTINEZ starved to death.

55. Not only did the Individual Defendants cause MARTINEZ's death, they callously exacerbated his pain and suffering over the course of two and a half months.

56. In so doing, the Individual Defendants acted willfully, recklessly, and with deliberate indifference, thereby depriving MARTINEZ of his clearly established rights to adequate medical and mental health care.

57. The Individual Defendants are therefore liable for compensatory and punitive damages, as well as attorneys' fees.

**SECOND CLAIM FOR RELIEF**

**DEPRIVATION OF FAMILIAL ASSOCIATION**

**(42 U.S.C. § 1983; (42 U.S.C., § 1983; Nevada Constitution, Article 1, § 8)**

***SONIA ESPARZA v. Individual Defendants***

58. Plaintiffs hereby incorporate the facts alleged in the preceding sections and further allege as follows:

59. A parent has fundamental liberty interests in companionship and association with his or her child. These interests are secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 1, section 8, of the Nevada Constitution.

60. A jail official can be held liable for depriving a parent of his or her interests in companionship and association with his or her child when the official's underlying constitutional violation is sufficiently egregious to shock the conscience. A jail official's conduct shocks the conscience when the official had time to deliberate before acting or failing to act.

61. As described in Plaintiffs' first claim for relief, the acts and omissions of the Individual Defendants violated the Fourteenth Amendment to the United State Constitution and Article 1, section 8 of the Nevada Constitution.

62. These acts and omissions shock the conscience because the Individual Defendants had an enormous amount of time to deliberate, but nevertheless failed to transfer MARTINEZ to a hospital, place him in medical unit, properly medicate him, or humanely force feed him.

63. As a result of these unconscionable acts and omissions, the Individual Defendants have deprived SONIA ESPARZA of what should have been a lifetime of companionship and association with her son.

64. The Individual Defendants are therefore liable for compensatory and punitive damages, as well as attorneys' fees.

### THIRD CLAIM FOR RELIEF

### OVERDETENTION

### (42 U.S.C. § 1983; Nevada Constitution, Article 1, § 8)

### *Special Administrator v. Individual Defendants*

65. Plaintiffs hereby incorporate the facts alleged in the preceding sections and further allege as follows:

66. Pre-trial detainees held in state custody have a constitutional right to be free from continued detention after it is known or should be known that the detainee is entitled to release.

67.  Freedom from incarceration is the paradigmatic liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by Article 1, section 8, of the Nevada Constitution.

68. The Individual Defendants unlawfully interfered with this interest when they halted, obstructed, or delayed MARTINEZ's court-ordered transfer to the care of the Department of Health and Human Services, thereby preventing MARTINEZ from obtaining necessary, life-sustaining medical and mental health care.

69. As a result of these acts and omissions, MARTINEZ starved to death.

70. Not only did the Individual Defendants cause MARTINEZ's death, they callously exacerbated his pain and suffering over the course of 28 days.

71. In so doing, the Individual Defendants acted willfully, recklessly, and with deliberate indifference, thereby depriving MARTINEZ of his clearly established rights to freedom from incarceration and adequate medical and mental health care.

72. The Individual Defendants are therefore liable for compensatory and punitive damages, as well as attorneys' fees.

### FOURTH CLAIM FOR RELIEF

**MUNICIPAL LIABILITY, FAILURE TO TRAIN/POLICY AND CUSTOM**

**(42 U.S.C. § 1983)**

***Special Administrator v. LVMPD and WELLPATH***

73. Plaintiffs hereby incorporate the facts alleged in the preceding sections and further allege as follows:

74. At all relevant times, LVMPD and WELLPATH maintained a custom, pattern, and practice of failing to train and failing to adequately house, monitor, treat, and care for mentally ill individuals within their custody and control, including by, *inter alia*:

    a.  Maintaining adequate staffing levels;

    b.  Effectively screening and identifying mentally ill detainees entering CCDC;

    c.  Appropriately housing such detainees;

     d.  Promptly transferring such detainees to a hospital or placing them in a medical unit when ordered by the court or requested by a medical authority;

     e.  Consistently and adequately monitoring such detainees, especially those who fail to engage in self-care;

     f.  Providing adequate psychiatric and psychological care;

     g.  Humanely force-feeding starving detainees; and

     h.  Promptly summoning emergency services.

75. As described in ¶¶ 37-46, this custom has resulted in several deaths of schizophrenic detainees and LVMPD's open and notorious refusal to comply with Nevada's correctional death reporting requirement.

76. This custom caused the Individual Defendants to act with deliberate indifference to the rights of mentally ill detainees, including MARTINEZ.

77. LVMPD and WELLPATH, through their officials and agents, were well-aware that this custom would result in the types of constitutional violations and injuries alleged herein. And yet, for reasons peculiar to each, including the pursuit of profit and political expediency, these officials made the deliberately indifferent choice to maintain this custom.

78. WELLPATH and LVMPD are therefore liable to Plaintiffs for compensatory damages, as well as attorneys' fees.

## FIFTH CLAIM FOR RELIEF

## DISABILITY DISCRIMINATION IN VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT; § 504 OF THE REHABILITATION ACT OF 1973

### (42 U.S.C. 12131 *et seq.*; 29 U.S.C. § 794(a))

### *Special Administrator v. LVMPD and WELLPATH*

79. Plaintiffs hereby incorporate the facts alleged in the preceding sections and further allege as follows:

80. At all relevant times, MARTINEZ was protected under the ADA because he suffered from and was diagnosed with schizophrenia, among other mental illnesses.

81. This disability substantially limited MARTINEZ's major life activities, including, but not limited to, his ability to communicate with others, cope with the stress of confinement, and engage in basic self-care.

82. CCDC receives federal funding to provide reasonable accommodations to disabled individuals such as MARTINEZ.

83. As described in ¶ 29, LVMPD and WELLPATH, through their officials and agents, were aware of MARTINEZ's disabilities and the manner in which they limited his major life activities.

84. Based on his disability, LVMPD and WELLPATH, through their officials and agents, housed MARTINEZ in a cell where he would not receive adequate medical and mental health care, as opposed to a medical unit that was available to other detainees.

85. LVMPD and WELLPATH had ample time and opportunity to correct this discrimination by placing MARTINEZ in such a unit or transferring him to a hospital at little additional expense or risk. And yet, they chose not to.

86. In so doing, LVMPD and WELLPATH failed to accommodate MARTINEZ's disability and discriminated against him based on the same.

87. LVMPD and WELLPATH are therefore liable for compensatory damages, as well as attorneys' fees.

### SIXTH CLAIM FOR RELIEF

**WRONGFUL DEATH**

***SONIA ESPARZA v. All Defendants***

88. Plaintiffs hereby incorporate the facts alleged in the preceding sections and further allege as follows:

89. The Individual Defendants acted recklessly and negligently by:

    a.   Failing to maintain adequate staffing levels;

b.  Failing to effectively screen MARTINEZ;

c.  Failing to ensure that MARTINEZ was cared for by trained staff who understood his needs;

d.  Failing to house MARTINEZ in a unit that was suited to his needs;

e.  Failing to transfer MARTINEZ when ordered to do so;

f.  Failing to transfer MARTINEZ when it became apparent that doing so was medically necessary;

g.  Failing to consistently and adequately monitor MARTINEZ, including by regularly taking his weight and maintaining a food log to track his intake;

h.  Failing to provide adequate psychiatric and psychological care;

i.  Failing to respond to MARTINEZ's starvation and dehydration;

j.  Failing to humanely force feed MARTINEZ;

k.  Failing to promptly summon emergency services; and

l.  Failing to properly train, supervise, and discipline those responsible for MARTINEZ's care.

m.  Failing to comply with the Judge Craig's Order to transfer MARTINEZ to Lakes Crossing after determining he was not competent to stand trial.

90. As these acts and omissions caused MARTINEZ's death and were committed under color of law and within the scope of the Individual Defendants' employment, LVMPD and WELLPATH are vicariously liable for all permissible damages, fees, and costs under NRS 41.085 and 41.100.

## SEVENTH CLAIM FOR RELIEF

### NEGLECT OF A VULNERABLE PERSON

*Special Administrator v. All Defendants*

91. Plaintiffs hereby incorporate the facts alleged in the preceding sections and further allege as follows:

92. At all relevant times, MARTINEZ suffered from and was diagnosed with/documented as having schizophrenia, among other mental illnesses, making him a vulnerable person with the meaning of NRS 41.1395.

93. The Individual Defendants' reckless and negligent conduct set forth in ¶ 89 amounted to abuse and neglect within the meaning of NRS 41.1395.

94. As this conduct caused MARTINEZ's death and was committed under color of law and within the scope of the Individual Defendants' employment, LVMPD and WELLPATH are vicariously liable for all permissible damages, fees, and costs under NRS 41.085, 41.100, and 41.1395.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against all defendants to this action, as follows:

      a. For compensatory damages, including general and special damages, survival damages, and wrongful death damages in an amount to be proven at trial;

      b. For punitive damages against the Individual Defendants in an amount to be proven at trial;

      b. For hedonic damages;

      c. For funeral and burial expenses;

      d. For interest;

      e. For attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

///
///
///
///
///

Plaintiffs hereby demand a trial by jury.

Dated this 11th day of April, 2024.          PETER GOLDSTEIN LAW CORP

                                             */s/ Peter Goldstein*
                                             Peter Goldstein, SBN 6992

                                             Attorney for Plaintiffs,
                                             *SONIA ESPARZA, individually, and as*
                                             *Special Administrator of the Estate of*
                                             *FERNANDO MARTINEZ, JR.*

# EXHIBIT A

# STATE OF NEVADA
## CERTIFICATION OF VITAL RECORD

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
DIVISION OF PUBLIC AND BEHAVIORAL HEALTH
VITAL STATISTICS

### CERTIFICATE OF DEATH

CASE FILE NO. 4334541

**2023005138**
STATE FILE NUMBER

**TYPE OR PRINT IN PERMANENT BLACK INK**

**DECEDENT**

| 1a. DECEASED-NAME (FIRST, MIDDLE, LAST, SUFFIX) | | 2. DATE OF DEATH (Mo/Day/Year) | 3a. COUNTY OF DEATH |
|---|---|---|---|
| **MARTINEZ** Jr. Fernando | | February 14, 2023 | Clark |

| 3b. CITY, TOWN, OR LOCATION OF DEATH | 3c. HOSPITAL OR OTHER INSTITUTION -Name(If not inst, give street and number) | 3e. If Hosp. or Inst. indicate DOA,OP/Emer. Rm. Inpatient(Specify) | 4. SEX |
|---|---|---|---|
| Las Vegas | 330 S. Casino Center Blvd | Jail/Detention Center | Male |

| 5. RACE (Specify) | 6. Hispanic Origin? Specify | 7a. AGE-Last birthday (Years) | 7b. UNDER 1 YEAR — MOS | DAYS | 7c. UNDER 1 DAY — HOURS | MINS | 8. DATE OF BIRTH (Mo/Day/Yr) |
|---|---|---|---|---|---|---|---|
| White | Yes - Mexican | 33 | | | | | April 10, 1989 |

| 9a. STATE OF BIRTH (If not US/CA, name country) | 9b. CITIZEN OF WHAT COUNTRY | 10. EDUCATION | 11. MARITAL STATUS (Specify) | 12. SURVIVING SPOUSE'S NAME (Last name prior to first marriage) |
|---|---|---|---|---|
| Texas | United States | 13 | Never Married | |

| 13. SOCIAL SECURITY NUMBER | 14a. USUAL OCCUPATION (Give Kind of Work Done During Most of | 14b. KIND OF BUSINESS OR INDUSTRY | Ever in US Armed Forces? No |
|---|---|---|---|
| | UNKNOWN/NOT CLASSIFIABLE | UNKNOWN/NOT CLASSIFIABLE | |

| 15a. RESIDENCE - STATE | 15b. COUNTY | 15c. CITY, TOWN OR LOCATION | 15d. STREET AND NUMBER | 15e. INSIDE CITY LIMITS (Specify Yes or No) |
|---|---|---|---|---|
| | | | UNKNOWN | |

**PARENTS**

| 16. FATHER/PARENT - NAME (First Middle Last Suffix) | 17. MOTHER/PARENT - NAME (First Middle Last Suffix) |
|---|---|
| Fernando MARTINEZ SANTOS | Sonia GRAJEDA |

| 18a. INFORMANT- NAME (Type or Print) | 18b. MAILING ADDRESS (Street or R.F.D. No, City or Town, State, Zip) |
|---|---|
| Fernando MARTINEZ SANTOS | 11145 E Rio Grande Ave #8 El Paso, Texas 79902 |

**DISPOSITION**

| 19a. BURIAL, CREMATION, REMOVAL, OTHER (Specify) | 19b. CEMETERY OR CREMATORY - NAME | 19c. LOCATION City or Town State |
|---|---|---|
| Cremation | Paradise Valley Crematory | Las Vegas Nevada 89119 |

| 20a. FUNERAL DIRECTOR - SIGNATURE (Or Person Acting as Such) | 20b. FUNERAL DIRECTOR LICENSE NUMBER | 20c. NAME AND ADDRESS OF FACILITY |
|---|---|---|
| **LAUREN A GUIDO** SIGNATURE AUTHENTICATED | FD980 | Las Vegas Cremations - Eastern 6000 S Eastern Ave, Suite 2A Las Vegas NV 89119 |

**TRADE CALL**

TRADE CALL - NAME AND ADDRESS

**CERTIFIER**

| To Be Completed by CERTIFYING PHYSICIAN | | To Be Completed by CORONER'S OFFICE | |
|---|---|---|---|
| 21a. To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) stated. (Signature & Title) | | 22a. On the basis of examination and/or investigation, in my opinion death occurred at the time, date and due to the cause(s) stated. (Signature & Title) **JAN M GORNIAK DO** SIGNATURE AUTHENTICATED | |
| 21b. DATE SIGNED (Mo/Day/Yr) | 21c. HOUR OF DEATH | 22b. DATE SIGNED (Mo/Day/Yr) March 29, 2023 | 22c. HOUR OF DEATH 20:03 |
| 21d. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print) | | 22d. PRONOUNCED DEAD (Mo/Day/Yr) February 14, 2023 | 22e. PRONOUNCED DEAD AT (Hour) 20:03 |

| 23a. NAME AND ADDRESS OF CERTIFIER (PHYSICIAN, ATTENDING PHYSICIAN, MEDICAL EXAMINER, OR CORONER) (Type or Print) | 23b. LICENSE NUMBER |
|---|---|
| Jan M Gorniak DO  1704 Pinto Lane Las Vegas, NV 89106 | DO1796 |

**REGISTRAR**

| 24a. REGISTRAR (Signature) | 24b. DATE RECEIVED BY REGISTRAR (Mo/Day/Yr) | 24c. DEATH DUE TO COMMUNICABLE DISEASE |
|---|---|---|
| **NANCY BARRY** SIGNATURE AUTHENTICATED | March 29, 2023 | YES ☐  NO ☒ |

**CAUSE OF DEATH**

| 25. IMMEDIATE CAUSE (ENTER ONLY ONE CAUSE PER LINE FOR (a), (b), AND (c).) | Interval between onset and death |
|---|---|
| PART I (a) Hypertensive Cardiovascular Disease | |
| DUE TO, OR AS A CONSEQUENCE OF: (b) | Interval between onset and death |
| DUE TO, OR AS A CONSEQUENCE OF: (c) | Interval between onset and death |
| DUE TO, OR AS A CONSEQUENCE OF: (d) | Interval between onset and death |

**CONDITIONS IF ANY WHICH GAVE RISE TO IMMEDIATE CAUSE STATING THE UNDERLYING CAUSE LAST**

| PART II OTHER SIGNIFICANT CONDITIONS-Conditions contributing to death but not resulting in the underlying cause given in Part 1. Renal Failure, Hypernatremic Dehydration, Unspecified Psychosis | 26. AUTOPSY (Specify Yes or No) Yes | 27. WAS CASE REFERRED TO CORONER (Specify Yes or No) Yes |
|---|---|---|

| 28a. ACC., SUICIDE, HOM., UNDET. OR PENDING INVEST. (Specify) | 28b. DATE OF INJURY (Mo/Day/Yr) | 28c. HOUR OF INJURY | 28d. DESCRIBE HOW INJURY OCCURRED |
|---|---|---|---|
| | | | |

| 28e. INJURY AT WORK (Specify Yes or No) | 28f. PLACE OF INJURY- At home, farm, street, factory, office building, etc. (Specify) | 28g. LOCATION STREET OR R.F.D. No. | CITY OR TOWN | STATE |
|---|---|---|---|---|
| | | | | |

"CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE DOCUMENT ON FILE WITH THE REGISTRAR OF VITAL STATISTICS, STATE OF NEVADA." This copy was issued by the Southern Nevada Health District from State certified documents authorized by the State Board of Health pursuant to NRS 440.175.

DATE ISSUED: 8/28/2023

Registrar of Vital Statistics

By: *Susan Bannis*  SIGNATURE AUTHENTICATED

This Copy not valid unless prepared on engraved border displaying date, seal and signature of Registrar.
SOUTHERN NEVADA HEALTH DISTRICT • P.O. Box 3902 • Las Vegas, NV 89127 • 702-759-1010 • Tax ID # 88-0151573

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



EXHIBIT B

ELECTRONICALLY SERVED
10/26/2023 4:41 PM

Electronically Filed
10/26/2023 4:39 PM

*signature*

CLERK OF THE COURT

**OASA**
Peter Goldstein, Esq., (SBN 6992)
**PETER GOLDSTEIN LAW CORP**
10161 Park Run Drive, Suite 150
Las Vegas Nevada, 89145
Telephone:  702-474-6400
Facsimile:   888-400-8799
peter@petergoldsteinlaw.com

*Attorney for Petitioner,*
*Sonia Esparza*

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| In the Matter of the Estate of<br>FERNANDO MARTINEZ JR.<br><br>　　　　　Deceased, | Case No.:  P-23-117983-E<br><br>Dept. 26<br><br>ORDER |

**ORDER APPOINTING SPECIAL ADMINISTRATOR AND FOR ISSUANCE OF**

**SPECIAL LETTERS OF ADMINISTRATION**

Upon submission of a verified *ex parte* petition for appointment of a special administrator and for issuance of special letters of administration representing as follows:

1.    Fernando Martinez Jr. ("Decedent") died intestate on February 14, 2023, in Clark County, Nevada.

2.    Decedent was a resident of Clark County, Nevada when he died.

3.    Petitioner has never been convicted of a felony.

4.    Pursuant to NRS 139.040, the Decedent did not have a surviving spouse or children. Accordingly, a surviving parent is entitled to priority for appointment as a special administrator.

5.    Sonia Esparza, the Decedent's mother, and Fernando Martinez-Santos, the

1

1  Decedent's father, are the Decedent's only heirs.

2       6.      At the time of the Decedent's death, one of the heirs and surviving parents,

3  Fernando Martinez-Santos, was estranged from the Decedent and had been for about 30 years. He

4  also resides in Texas

5       7.      A nomination, pursuant to NRS 139.050, is inapplicable here because petitioner

6  Sonia Esparza, the decedent's mother, is entitled to serve as a special administrator pursuant to

7  NRS 139.040.

8       8.      Petitioner Sonia Esparza, as the Decedent's mother, is the sole special administrator

9  of Decedent's Estate for purposes of filing and maintaining the Litigation of wrongful death

10  (which has not yet been filed).

11

12       **NOW THEREFORE IT IS HEREBY ORDERED** that Petitioner Sonia Esparza is

13  appointed as Special Administrator of the Estate of Fernando Martinez Jr. and that Special Letters

14  of Administration be issued, without bond, to Petitioner Sonia Esparza upon taking the oath of

15  office, for the purpose of administering the estate in accordance with Nevada Revised Statutes

16  Chapter §140.040.

17       **IT IS FURTHER ORDERED** that all moneys received by this Estate will be placed in

18  the attorney's trust account until further ordered by the Court.

19       **IT IS FURTHER ORDERED** that the settlement of the Decedent's lawsuit is subject to

20  this Court's approval.

21

22  Dated this ____ day of _____ ,2023.

Dated this 26th day of October, 2023

AD2 B8E 0694 3540
**Gloria Sturman**
**District Court Judge**

District Court Judge

27  Respectfully submitted,

28

2

By:____/s/Peter Goldstein_____
    PETER GOLDSTEIN, ESQ. [SBN 6992]
    10161 Park Run Drive, Suite 150
    Las Vegas, Nevada 89145
    *Attorney for Petitioner*
    *Sonia Esparza*

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| | |
|---|---|
| In the Matter of: | CASE NO: P-23-117983-E |
| Fernando Martinez, Jr., Deceased | DEPT. NO.  Department 26 |

## <u>AUTOMATED CERTIFICATE OF SERVICE</u>

    This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order Appointing Special Administrator was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 10/26/2023

Peter Goldstein                                 peter@petergoldsteinlaw.com

Staff Peter Goldstein Law Corp                  staff@petergoldsteinlaw.com